Filed 7/30/13  P. v. Stewart CA2/26

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>DESHAWN ANTHONY STEWART,<br><br>   Defendant and Appellant. | 2d Crim. No. B242578<br>(Super. Ct. No. TA122188-01)<br>(Los Angeles County) |

Deshawn Anthony Stewart appeals a judgment following conviction of dissuading a witness from reporting a crime, and misdemeanor battery, with a finding that he served a prior prison term.  (Pen. Code, §§ 136.1, subd. (b)(1), 243, subd. (e)(1), 667.5, subd. (b).)[1]  We affirm.

### FACTS AND PROCEDURAL HISTORY

In 2011, Stewart and Erica Coleman were in a dating relationship.  Stewart frequently abused alcohol and on "too many [occasions] to remember," slapped and struck Coleman.  Nevertheless, Coleman continued to date Stewart.

In the morning of October 2, 2011, Stewart and Coleman spent the day together at a car club event.  Stewart consumed alcohol that day and was "staggering" and "slurring" his speech.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

That evening, Stewart and Coleman were visiting friends at a motorcycle club. Coleman sat in the driver's seat of Stewart's vehicle. Stewart became angry when he thought a man was speaking to Coleman. After an exchange of words with the man, Stewart obtained a gun from the trunk of his vehicle. He cocked the gun, placed it against Coleman's ear, and threatened to shoot her. Coleman calmed Stewart and suggested that they return home. Stewart agreed, but first cleaned the gun and returned it to the trunk.

Coleman drove to a fast-food restaurant and then to the apartment that Stewart shared with his mother. They ate in Stewart's bedroom and had a brief conversation. Stewart then rose from the bed, inspected Coleman's purse, and claimed a condom was missing. He struck Coleman as she "balled up on the bed," causing a "black eye." Stewart's mother, Darcella Ellis, knocked on the bedroom door and complained about the noise. Stewart responded that she should "stay out of his business."

Stewart then straddled Coleman and accused her of infidelity. Ellis returned to Stewart's bedroom and asked why Stewart was arguing with Coleman. Stewart ran from the bedroom with Coleman's purse, which contained her cellular telephone, identification, and money. Coleman followed Stewart outside, grabbed his arm, and demanded her purse. Stewart pushed her to the ground and left in his vehicle.

Shortly thereafter, Stewart returned to the apartment and demanded that Coleman leave with him. When she refused, Stewart attempted to pull her from the apartment. Ellis shouted at Stewart to stop and stated that she intended to telephone for police assistance. Stewart then threatened "to kill her dog for getting in his business."

Ellis went outside and called the police emergency dispatcher. In a recorded telephone call, Ellis stated that her son had been drinking and hit his girlfriend in the eye. She added that she was standing outside barefoot in her bathrobe, and that Stewart had taken her cellular telephone: "I had my cell phone in my hand and he smacked my cell phone out of my hand." Ellis also stated that she was concerned that

2

neighbors would contact the police or the landlord. At trial, the prosecutor played the recorded telephone call.

Police officers soon arrived but Stewart left the apartment before their arrival. An officer photographed Coleman's facial injuries. The following day, Stewart returned Coleman's purse to her.

At trial, Coleman described several incidents of domestic violence where Stewart slapped or struck her. Stewart's former girlfriend, Tywana Parish, also testified that Stewart struck her because he thought that she used her cellular telephone to call another man.

The jury convicted Stewart of dissuading a witness from reporting a crime (count 1), and misdemeanor battery (count 2). (§§ 136.1, subd. (b)(1), 243, subd. (e)(1).) It acquitted him of other counts concerning unlawful acts with a firearm. In a separate proceeding, the trial court found that Stewart served four prior prison terms within the meaning of section 667.5, subdivision (b). It sentenced Stewart to four years in prison, consisting of an upper three-year term for count 1, plus a one-year term for a prior prison term enhancement. The court imposed a one-year term for count 2, to be served concurrently. In addition, the court struck the remaining prior prison term allegations, imposed a $240 restitution fine, a $240 parole revocation restitution fine (stayed), an $80 court security assessment, and a $30 criminal conviction assessment, and awarded Stewart 258 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a)(1); Gov. Code, § 70373.)

Stewart appeals and contends that 1) the trial court erred by admitting the emergency police dispatch recording, and 2) there is insufficient evidence of specific intent to commit witness intimidation, thereby depriving him of due process of law pursuant to the federal and California Constitutions.

3

Stewart argues that the trial court abused its discretion by admitting evidence of the emergency dispatch call because circumstances of the statement do not satisfy the spontaneous statement exception to the hearsay rule, as set forth in Evidence Code section 1240. He claims that there is insufficient evidence of a startling event, pointing out that Ellis informed the dispatcher that she wanted to return to sleep and did not want her son arrested ("I don't want him to go to jail . . . I want him just to stop . . . . Everybody wants to go to bed."). Stewart asserts that Ellis did not telephone the dispatcher immediately, but deliberated and reflected prior to making the call. He adds that Ellis's statements that he "grabbed [her] cell phone" do not relate to a startling event of domestic violence. Stewart concludes the error is prejudicial, pointing out that Ellis did not testify at the preliminary examination or at trial, and the prosecution used the dispatcher's recording to establish count 1, dissuading a witness.

Evidence Code section 1240 provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." To be admissible as a spontaneous statement, it is required that (1) there be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been made before there has been time to contrive and misrepresent; and (3) the utterance must be related to the circumstance of the occurrence preceding it. (*People v. Riccardi* (2012) 54 Cal.4th 758, 832.) "The crucial element in determining whether an out-of-court statement is admissible as a spontaneous declaration is the mental state of the speaker." (*People v. Gutierrez* (2009) 45 Cal.4th 789, 811.)

Whether the requirements of the spontaneous statement exception are satisfied is generally a factual question for the trial court. (*People v. Saracoglu* (2007)

152 Cal.App.4th 1584, 1588-1589.) In performing this task, the court necessarily exercises an element of discretion. (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1271 [trial court's discretion broadest when it determines whether an utterance was made while the declarant was still in a state of excitement]; *Saracoglu,* at p. 1589.)

The trial court did not abuse its discretion by permitting evidence of the dispatch call as a spontaneous exception to the hearsay rule. Ellis made the telephone call after hearing the assault on Coleman, seeing her eye injury, and watching Stewart "pull[] [Coleman] down the hall." When Ellis "scream[ed]" at Stewart to cease assaulting Coleman, Stewart stated that he "was going to kill her dog for interfering with [him]."

Ellis's statements - at times wandering and nonresponsive - also reflect her nervous excitement. "[S]ome of [the victim's] answers were fragmented, and others were nonresponsive, indicating a clear lack of deliberation and measured thoughtfulness. . . . He wandered a bit in some of his responses, but that's what people tend to do when they are agitated and excited in the wake of a traumatic event." (*People v. Brenn* (2007) 152 Cal.App.4th 166, 173.) Here Ellis stood outside, in her bathrobe and shoeless, to summon assistance.

Moreover, the lapse of time between when Ellis left the apartment and her call to the emergency dispatcher was approximately 90 minutes. The trial court reasonably concluded that Ellis made her statement while still in a state of nervous excitement. (*People v. Gonzales*, *supra*, 54 Cal.4th 1234, 1271 [victim's statement made "that day"].)

Finally, Ellis's statements relate to the preceding occurrences of domestic violence - Stewart striking Coleman and then pulling her down the hallway of the apartment. The statements also concern the preceding occurrence of Stewart taking the cellular telephones of the two women to prevent them from summoning assistance. The trial court did not abuse its discretion in admitting evidence of the statements.

5

Stewart argues that insufficient evidence supports his conviction of dissuading a witness pursuant to section 136.1, subdivision (b)(1).

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Streeter* (2012) 54 Cal.4th 205, 241.)  Our review is the same in a prosecution primarily resting upon circumstantial evidence. (*People v. Watkins* (2012) 55 Cal.4th 999, 1020.)  We do not redetermine the weight of the evidence or the credibility of witnesses. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129, overruled on other grounds by *People v. Rundle* (2008) 43 Cal.4th 76, 151.)  We must accept logical inferences that the jury might have drawn from the evidence although we would have concluded otherwise. (*Streeter*, at p. 241.)

Dissuading a witness is a specific intent crime. (*People v. Navarro* (2013) 212 Cal.App.4th 1336, 1347.)  The prosecutor must establish that defendant has attempted to prevent or dissuade a person who is a victim or witness to a crime from making a report to law enforcement. (*Ibid.*)  "The prosecution must also establish that 'the defendant's acts or statements [were] intended to affect or influence a potential witness's or victim's testimony or acts.'" (*Ibid.*)

Sufficient evidence and reasonable inferences therefrom support Stewart's conviction of dissuading a witness.  Coleman testified that Stewart telephoned Ellis on her cellular telephone after he initially left the apartment.  When Ellis later telephoned the police dispatcher, she stated that Stewart had taken her telephone and Coleman's telephone.[2]  Coleman also testified that when Ellis returned to the apartment, she did not have her telephone.  A reasonable inference from this evidence is that Stewart took the

---

[2] Ellis made the police dispatch call from a public telephone or a telephone that was not her cellular telephone.

cellular telephones of Ellis and Coleman to prevent them from summoning police officers.

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P.J.

We concur:

YEGAN, J.

PERREN, J.

Michael Shultz, Temporary Judge[*]

Superior Court County of Los Angeles

_____

Linda L. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, for Plaintiff and Respondent.

_____

[*] (Pursuant to Cal. Const., art. VI, § 21.)